Good morning, everyone. May it please the Court. My name is Hortensia Delgadillo, and I represent Mr. Williams in this action. This is a case primarily about retaliation, and it's retaliation that the remaining claims are in the Court below were retaliation based on the theory of 1981 retaliation and retaliation under Title VII. So the issues before the Court that we are going to argue today have to do with the feasibility of Mr. Williams proceeding under 1981 claim for retaliatory conduct and also the sufficiency of the evidence that would support both the Title VII claim and the 1981 claim. We will address the issues that we are going to argue today. Kagan, since your time is so short in this case, I wonder if we could go to the retaliation claim and causation. What evidence is there in the record beyond temporal proximity that establishes a prima facie case for Williams' retaliation claim? What beside the fact that it happened so soon? The evidence is actually fairly abundant, and we've cited a number of different circumstances. And, of course, it is a circumstantial kind of case. The circumstances have to do with once the appellee has established the nondiscriminatory reason. What they've alleged here, of course, is that the successful applicant was the one who was better qualified. But there are a lot of circumstances surrounding that where there is disputed evidence about whether or not, one, whether he's truly qualified. The evidence that we believe would be presented to the court below has to do with the relative qualifications. Our client, Mr. Williams, even on paper, had met the minimum qualifications of four years of being in the transportation type of position, where the successful applicant did not. He had about half a year less. Also, the EEOC, the Equal Employment Opportunity Commission, issued a determination. And they concluded that, in fact, Mr. Williams, our client, was the individual who was a better qualified individual. So that's just one of the things. The way they got to that individual to fill the position, the successful applicant, Judge Nelson, also has a lot to do with the basis of our claim. And I think those circumstances are very suspicious. They reopened the position, even though Tucson Unified School District has a rule of five that they follow. The rule of five basically says that. But when they first advertised the position, they did so during the summer. Many employees don't work for the school district during the summer. And should they not have the opportunity to learn of this opening and apply for the opening? Yes, certainly, Judge Ross. The applicants typically go into the Tucson Unified School District main office to learn of the positions that are open. Even though it's a 10-month position, they know that. And there was testimony in the court below concerning that. Also, typically, in one of the suspicious circumstances, that typically they do not repost positions. I mean, they just don't do that. It's a very rare circumstance. And this Department historically had not. They saw permission to do so when they were given permission to do that. Correct. Isn't that correct? They saw permission to do so. And, of course, this follows on the heels of the complaint of discrimination, which had to do directly with what was going on in this Department, the inextricable zero, as we call it, about the total absence of any individual of African-American descent in supervisory positions or management positions. That's what Mr. Williams had alleged initially, and that's the basis of his claim. So this followed on the heels of that. So, yes, they did seek permission and were granted permission to do that. But they reopened initially claiming to the Equal Employment Opportunity Commission that there were too few applicants. The whole issue about whether or not individuals may or may not have been formed came up very much after the fact, which is another red flag. And those red flags in the series of events that unfolded are the very things that really point, are the circumstances that we have pointed to and I believe that would support an inference of discrimination, along with the temporal sequence of events. That's just the basic framework, of course. With respect to other types of circumstances as well, there's also discrepancies that occurred even after the applicants underwent. There were three stages that they were subjected to to be able to successfully compete for this position. After the initial screening, the second level or layer was actually a written examination. Mr. Williams and the successful applicant were pretty much neck and neck. Mr. Williams, and there was testimony that Mr. Williams truly should have been the higher scoring individual, even though they were very close. At the third level, and this is what TUSD claims was the litmus test, basically, if you will, for who was going to be ultimately selected for the position. At the last stage, it was an oral question and answer, and TUSD claimed that the successful applicant was the individual who actually scored higher at that end. However, the person who ultimately made the decision within the department, the department head, he testified in deposition that he actually considers all of it together, which makes more sense to actually consider the individual based on all of the kinds of qualifications, and especially persons who have been Mr. Williams had been in the department many, many years. And for that reason, you know, they were going to consider that as well. And Mr. Stacey, the department head, said that, in fact, that's what he does. He also testified contradictorily that later on in his deposition that he basically just, you know, accepted whoever they gave him, which is not the case, because that's not how typically the decision is made within the department. In addition to that, there are other, as I said, there are other circumstances. The scoring itself, there were discrepancies in that. And I would just reinforce that the Equal Employment Opportunity Commission determination of discrimination or retaliation in this case is another part of the puzzle and part of the evidence that would be presented to a jury. Obviously, its conclusion is not the one that the court must adopt or that the trier of fact would have to adopt, but it's going to be considered along with everything else. So I believe there are, and we are certainly, we propose to the Court there is sufficient evidence. Certainly, all these things are red flags. It becomes even the red flag is raised higher and higher with each circumstances that is added to the puzzle. And all that basically leaves a question, when the inference is drawn, as the standard is to draw it in the favor of the person who did not move for summary judgment in the court below, which is Mr. Williams, the inference should be drawn in his favor. So all that together collectively and in combination should point to at least one of the motives being retaliatory. And because in a mixed motive analysis, which is what we are pursuing, it doesn't have to be the sole reason and it doesn't have to be the primary reason. It just has to be one of the reasons that motivated the employer not to select Mr. Williams. If you want to reserve some time for rebuttal, you may. Yes. In fact, I will close right now and reserve that time so I can address. Thank you very much. Thank you. May it please the Court. I'm Lyle Aldridge from Tucson. And I'm here on behalf of Tucson Unified School District. One entire portion of my brief was mooted by a Supreme Court decision that I think I gave the Court notice of. So whether Section 1981 can be used for a retaliation claim in this case is not in the case anymore. The core of this case is about causation and whether there's sufficient evidence, I believe, to go to a jury. The case law requires that the evidence of pretext be both substantial and specific and not just evidence that there was a pretext but evidence that the reason given by the employer for the selection was a pretext. There is no evidence of that kind in this case. The decision in this case was made by a committee. It was made by a selection committee that interviewed all the applicants. All the applicants, including Mr. Williams, entered the final selection process on an equal footing. They participated in an interview by an interview committee that was composed of people outside the Transportation Department and chaired by Mr. Mockrus, who was from the Transportation Department and who would be supervising the position. Nick Mockrus was the person who made the decision to repost the position because it had been previously advertised during the summertime, and he felt that the year-round employee should have an opportunity to participate. Well, if that was so, then why, I gather, there's confusion about saying, well, it was reopened because there weren't enough people, or can we really believe those assertions? Well, I think, first of all, shouldn't the jury have a chance to review that? That might be the case if that were the decision at issue in this case, but that's not the decision at issue. The decision at issue is the decision, the later decision, to select Mr. Minor rather than the plaintiff. If this is the decision that is going to be reviewed, this employment decision, then there's no doubt that there was no timely complaint filed with the EEOC or the Arizona Civil Rights Division. The decision here happened nine months later. So the other problem is that there's not the evidence is not that there were contradictory explanations. The explanation was there weren't enough people. Now, how you interpret that, I don't know. I wasn't privy to the communications that led to that initial position statement being submitted to the Arizona Civil Rights Division, but the position given to the under the memorandum of understanding, which follows the rule of five, the slightly different explanation given by Mr. Mockrus, who was the actual decision-maker and never said anything else, was that there weren't enough people because the people who were there year-round were the only ones who were able to see the position announcement. So, number one, that's not the decision. Number two, it's a different decision. Secondly, it's a different decision-maker. I mean, it's not this is not the situation, the case law that appellant relies upon deals with the situation where the employer or the same decision-maker has given contradictory explanations for the same decision. This is not the decision that's under review here. And it was there's never been any contradictory explanation by Mr. Mockrus, but that he opened the process again and reannounced it and got the approval from human resources. Furthermore, there's no indication that that decision had more impact on Mr. Williams than it had on everybody else in the process. It would only be a decision of pertinence if somehow you could show that he's the one who would have gotten the job if that hadn't happened. The other important issue in this case, or maybe not a central issue but a point, is that the plaintiff himself has given sworn testimony that he does not believe his case. I mean, he testified that he would not he believes he would not have been selected for this promotion even if he had never made a complaint. That was his testimony in the grievance process that he filed internally about this selection process. That was his testimony in the deposition that I took from him below. That he was less qualified because of discriminatory animus among the selectors. As you say, why? No. Because he has spent his career giving the employer ample nondiscriminatory reasons not to choose him. Basically, he has a history of criminal conduct against the district. He has been disrespectful to his superiors. And he told me in deposition that he didn't think he was the right person for the job because he didn't intend to do the job the way that the district wanted it to be done. I mean, that he basically has spent his career giving his employer ample reason not to like him, ample legitimate reason not to like him, and then is claiming that any animosity that might be displayed toward him must be a product of this complaint that he made 9 months before entering into the or before the decision was made in this process. It's kind of an example of what you might call sacred cow syndrome. I mean, you don't become a special person. Well, I don't know whether you can put so much weight on what he said. If this was a factor, isn't that really all that he has to establish? Well, I thought it was significant that, you know, but for causation. He swore an affidavit before the EEOC that he believed that but for his complaining, he would have been selected for the position. And then he gives sworn testimony at two levels saying otherwise, that he doesn't believe that he would have been selected. So it's certainly of significance to me that he's given the employer all these reasons not to like him. Counsel, you emphasize the 9 months wasn't really more like 6 months. It's still a period of time because there was a hold for 3 months that was placed the OED put a hold on the hiring for 3 months. So basically nothing could have happened there. But whether I assume your argument would be the same whether it's 9 months or 6 months. Well, I suppose if you apply a tolling theory, but I don't think that discriminatory animus gets told in people's minds. I mean, I think that the inference that's drawn from temporal proximity rests upon reality of the real period of time, not some legal fiction about whether time stops running during a period that things can't happen. That would be my only response to that. I think I've made my position clear in the briefing, and I apparently have plenty of time left, but unless you have your questions. I don't feel any. I don't feel compelled to use it. Thank you, Your Honor. Thank you. Thank you. I'd like to address the issue about the plaintiff's testimony concerning whether or not he believed it. He, I do know that he, and I agree, he did say something to the effect that he doesn't believe, you know, he thought he wouldn't get the job. But he also said the complaint that he made, that sealed the deal. You know, he knew that that was the nail in the coffin. And basically he knew the handwriting was on the wall. As I pointed earlier to the evidence of causation, one of the things that the TOSD also did is that when they reopened the position, there were efforts to deliberately invite at least one other African-American individual to compete for the position. And we believe that was. That's one of the circumstances that we'll point to. That was by design in order to make sure the person who's in the comparison, he had less experience, he was an outsider when Mr. Williams was a successful person who was an employee there for about 14 years within the department. And he, you know, he was able to compete. He met the qualifications more than amply met them. And when he testified about whether or not he believed he had a claim, he knew that there had never been an African-American supervisor in the department. So that's his backdrop when he comes in. He's very discouraged when he was questioned about whether he believed it or not. But he made the claim. He proceeded with his claim at the EEOC. And he was successful there. We believe that all of that, Your Honor, should go before the juries. Thank you very much. Thank you. The case just argued is submitted, and we'll hear the next case, which is Duarte v. A. Green.
judges: Schroeder, Nelson, Roth